IN THE UNITED STATES BANKRUPCTY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF | Case No. BK 21-40519 |
| | Chapter 11 |
| CHAD W. THOMAS, | (Lead Case) |
| LISA K. THOMAS, and CD THOMAS | |
| FARMS, LLC | |
| Debtors. | |

**Brief in Support of Motion for Relief from Automatic Stay
and/or Motion for Adequate Protection
and
Objection to Amended Plan of Reorganization**

Equity Bank, by and through Counsel of record, submits this Brief in Support of its Motion for Relief from Automatic Stay and/or Motion for Adequate Protection (Doc. # 17) (the "Motion"), and of its Objection (Doc. # 96) (the "Objection") to confirmation of Debtors' Amended Plan of Reorganization (Doc. # 84) (the "Plan").

**Introduction**

This Brief relates to the Motion filed in this case. Likewise, this Brief relates to Equity Bank's Objection to the Plan. The Debtors may be referred to herein as "Thomas" collectively. Separate references to the individual Debtors and CD Thomas Farms, LLC also are made, where appropriate.

The evidence shows Thomas has assets collectively as follows: real estate collateral for Equity Bank; equipment collateral for Equity Bank, and account receivable/rent collateral of Equity Bank. The evidence also shows the value of Equity Bank's collateral remaining in the Thomas estates is less than the principal amounts owed to Equity Bank, and Thomas has no equity in the collateral of Equity Bank under § 362(d)(2)(A) of the Bankruptcy Code.

Thomas has submitted a proposed Plan, to which Equity Bank filed the Objection (and ballots rejecting the Plan). The evidence shows the Plan is not feasible for numerous reasons and

cannot be confirmed under § 1129(a)(11) (as adopted by § 1191(a)). Similarly, because the Plan is not feasible, the evidence likewise shows the collateral of Equity Bank is not "necessary for an *effective reorganization*" under § 362(d)(2)(B).

Also, several other issues with the Plan prevent confirmation. The Plan does not properly address the priority claim of the IRS (Claim 3-1), which claim has not been stipulated, amended by the IRS, or subject to an adversary proceeding, in violation of § 1129(a)(9)(C). The Plan does not properly amortize the § 506 bifurcated "cramdown" claims held by Equity Bank under the terms provided by the Debtors, even if cramdown is available. The Plan does not pay unsecured creditors interest (at any rate) on the liquidation or "bests interests" value of the Thomas estates, in violation of § 1129(a)(7)(A)(ii). *See, e.g., In re Dow Corning Corp.*, 237 B.R. 380 (Bankr. E.D. Mich. 1999); *Matter of Rivera*, 116 B.R. 17 (Bankr. D.P.R. 1990). No projected disposable income is provided in years two through five of the Plan, so an analysis of § 1191(c)(2) disposable income is impossible with the Plan. The Plan does not properly pay Equity Bank (an impaired claimant voting to reject the Plan) the value of its collateral, in violation of § 1129(a)(7)(A)(ii).

Finally, the evidence shows the Plan has not been proposed in good faith, in violation of § 1191(a). The same evidence shows Equity Bank has proven "cause" for relief of the automatic stay under § 362(d)(1).

Thus, this Brief will address the various and often similar issues presented by the evidence in three parts:

1. <u>Relief under § 362(d)(2)(A) and Feasibility.</u> The evidence shows lack of Thomas's equity in the remaining collateral of Equity Bank under § 362(d)(2)(A). Then, the evidence shows the Plan (or any plan for that matter) is not feasible and will lead to a liquidation

or subsequent reorganization. Under the same basic test, that same evidence shows the collateral of Equity Bank is not necessary for an *effective reorganization*" under § 362(d)(2)(B).

2. <u>Various Plan Confirmation Issues</u>. For reasons outside feasibility, the Plan as presented cannot be confirmed, and confirmation of the Plan must be denied.

3. <u>Good Faith</u>. The Plan has not been proposed in good faith. The illusive actions and unfulfilled promises of Thomas continue to come to light, and the evidence shows Thomas's actions preclude Plan confirmation or a discharge. That same evidence shows cause for relief under § 362(d)(1). Thomas has honored very few promises, and the evidence shows, at best, thoughtlessness on the part of Thomas.

<u>Law</u>

The filing of a petition in bankruptcy operates as a stay of "any act to create, perfect, or enforce any lien against property of the estate," or "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. §§ 362(a)(4) & (6). The Court may grant relief of the stay (1) for cause, including lack of adequate protection of interests in property, or (2) with respect to actions against property, if (A) the debtor has no equity in the property, and (B) the property is not necessary for an effective reorganization. 11 U.S.C. §§ 362(d)(1) & (2).

"Cause" under § 362(d)(1) may include the following:

1. Bad Faith of debtor. *See, e.g., In re Southside Church of Christ of Jacksonville, Inc.*, 572 B.R. 384 (Bankr. M.D. Fla 2017);

2. Lack of adequate protection against accruing and delinquent first-lien real estate taxes with no or little equity cushion. *See, e.g., In re Biltwood Props., LLC*, 473 B.R. 70 (Bankr. M.D. Pa. 2012);

If a moving party satisfies the burden of proving a lack of adequate protection under § 362(d)(1), including lack of equity and diminution of interest in property, the debtor carries the burden to prove the moving party can be adequately protected *See, e.g., In re Cambridge Woodbridge Apts., L.L.C.*, 292 B.R. 832 (Bankr. N.D. Ohio 2003); *see also* 11 U.S.C. 362(g)(2).

The moving party has the burden of proving a debtor's lack of equity in property. 11 U.S.C. § 362(g)(1). Once that burden is met, however, the debtor has the burden of proving the property is necessary for an effective reorganization. *Id.* § 362(g)(2).

A court must find that confirmation of a plan is not likely to be followed by liquidation, or the need for further reorganization. *Id.* § 1129(a)(11). A bankruptcy court has an obligation to scrutinize the plan carefully and determine whether it offers a reasonable prospect of success and is workable. *In re Monnier Bros.*, 755 F. 2d 1336, 1341 (8th Cir. 1985). A plan can be approved only if it has a rational likelihood of success. *In re Danny Thomas Prop. II Ltd. P'ship*, 241 F.3d 959, 963 (8th Cir. 2001). A plan cannot be confirmed based only on speculation. *In re Riverbend Leasing, LLC*, 458 B.R. 520 (Bank. S.D. Iowa 2011). Any speculation must be founded in financial reality, and past performance is a generally accepted factor of determining future projections of performance. *In re. Am. Consol. Transp.*, 470 B.R. 47 (Bankr. N.D. Ill. 2012).

Real estate taxes in Nebraska become delinquent on May 1 and September 1 of each year following the year in which taxes are assessed. Neb. Rev. Stat. § 77-204. Delinquent real estate taxes, including those sold and paid by tax sale certificate, accrue interest at the rate of 14% per annum and constitute the first lien on the real estate. *Id.* §§ 77-207, 77-208, 77-1809.

Argument

As stated, there are three separate issues addressed in this Brief. First, whether the Plan is feasible, and if not, whether Equity Bank is entitled to relief from the automatic stay under its Motion. Second, there are various problems with the Plan not regarding feasibility which prevent confirmation of the Plan. Finally, third, the evidence indicates the Court should grant relief from stay for "cause" under § 362(d)(1), including lack of adequate protection, and deny confirmation of the Plan due to bad faith.

1.  Feasibility and Necessity for an Effective Reorganization under § 362(d)(2).

Facts have changed slightly since the Court last addressed Debtor's equity in Equity Bank's collateral. To begin, however, Equity Bank again presents the following evidence to meet its burden on the Motion, showing lack of Debtor's equity in collateral of Equity Bank.

1. Equity Bank is the holder of four notes executed by CD Thomas Farm, LLC and guaranteed by Chad Thomas as described in paragraph 2 of the Motion. (Affidavit of Tim Kerr, ¶ 3, Ex. A). The balance owing on the four promissory notes as of October 21, 2021 will be $2,143,526.45. (Equity Bank Ex. 25, Updated Balances, Doc. # 118).

2. The promissory notes are secured by:

   a. Security interests granted by security agreements as described in paragraph 5 of the Motion and executed by CD Thomas Farms, LLC, granting security interests in all equipment and machinery (as well as proceeds) of CD Thomas Farms, LLC, which security interests were perfected by filed uniform financing statements with the Nebraska Secretary of State and lien notations on vehicle titles (Equity Bank Ex. 2, Affidavit of Tim Kerr, Doc. # 34, ¶¶ 4, 5, and 6, Ex. B, C, and D). Each security agreement was granted to secure all present and future debts owed by CD Thomas Farms,

LLC under the promissory notes. (Equity Bank Ex. 2, Affidavit of Tim Kerr, Doc. # 34, ¶ 4, Ex. B).

      b.      A deed of trust executed on October 19, 2016 and recorded on October 27, 2016 as instrument number 2016-1425 in the Box Butte County, Nebraska real estate records, as described in paragraph 6.a of the Motion, which deed of trust granted a lien in the following real estate:

> Parcel 1: The SW ¼ of Section 5, Township 25 North, Range 49 West of the 6th P.M., Box Butte County, Nebraska;
>
> Parcel 2: The SE ¼ and the SW ¼ of Section 26, Township 25 North, Range 49 West of the 6th P.M., Box Butte County, Nebraska, except a tract of land in the SW ¼ more particularly described as follows: Commencing at the Southwest Corner of such SW ¼; thence North along the West line of said Section for a distance of 450.42 feet; thence East parallel to the South line of said Section for a distance of 450.42 feet; thence South parallel to the West line of said Section for a distance of 450.42 feet; thence West along the South line of said Section for a distance of 450.42 feet to the point of beginning.

(Equity Bank Ex. 2, Affidavit of Tim Kerr, Doc. # 34, ¶ 7, Ex. E); (Equity Bank Ex. 6, Affidavit of Wendy Fritzler, Doc. # 42, ¶ 7.c, Ex. A); (Equity Bank Ex. 7, Affidavit of Adam Hoesing, Doc. # 43, Ex. C). The deed of trust was granted to secure all present and future debts owed by CD Thomas Farm, LLC under the promissory notes. (Equity Bank Ex. 2, Affidavit of Tim Kerr, Doc. # 34, ¶ 7, Ex. E).

      c.      Accounts receivable for rent (proceeds of collateral) owed by Don Thomas for the amounts of $12,574 for a Case IH 340 Magnum Tractor and $37,800 for real estate leases. (Equity Bank Ex. 10, Chad Thomas Deposition Exhibits, Doc. # 105, Ex. 21).

4.  Parcels 1 and 2 are valued at $1,293,060. (Equity Bank Ex. 4, Affidavit of Blake Moreland, Doc. # 37, ¶ 7, Ex. A); (Equity Bank Ex. 26, Amended Plan of Reorganization, Doc. # 84).

5.  $263,152 of equipment assets remain for Thomas and are subject to the perfected security interests held by Equity Bank. That equipment is a CASE IH Magnum 340 MFWD Tractor, and various unsold items of equipment listed in the Plan. (Equity Bank Ex. 5, Affidavit of Jake Swisher, Doc. # 40, ¶¶ 3, 4, Ex. A, B); (Equity Bank Ex. 26, Amended Plan of Reorganization, Doc. 84).

6.  As of June 23, 2021, $32,475.51 was owed in delinquent real estate taxes due on Parcels 1 and Parcel 2, which currently accrues interest at 14% per annum. (Equity Bank Ex. 1, Affidavit of Valery Bell, Doc. 33, ¶¶ 3 and 4).

7.  Equity Bank claims an interest in a 2005 Peterbilt 379, which Thomas does not believe is part of the bankruptcy estates, and for which Equity Bank has been granted relief of the stay for replevin actions. (Equity Bank Ex. 19, 2005 Peterbilt 379 DMV Records, Doc. # 114); (Order, Doc. # 89). The 2005 Peterbilt 379 is valued between $35,000 and $45,000. (Equity Bank Ex. 5, Affidavit of Jake Swisher, Doc. # 40, ¶¶ 3, 4, Ex. A, B).

8.  Thus, Equity Bank holds the following position of interest on the remaining (even assuming, for the sake of argument, replevin on the 2005 Peterbilt 379 is possible) property:[1]

|     |                                                                |                |
| --- | -------------------------------------------------------------- | -------------- |
| a.  | Amount Owed:                                                   | $2,143,526.45  |
| b.  | Less RE collateral:                                            | ($1,293,060)   |
| c.  | Less equipment collateral:                                     | ($263,152)     |
| d.  | Less lease proceeds due:                                       | ($50,374)      |
| e.  | Deficiency:                                                    | $536,940.45    |
| f.  | Deficiency including RE taxes owed:                            | $569,415.96    |
| g.  | Less equipment proceeds ($72,571.48) arising but not yet received: | **$496,844.48** |

---

[1] This analysis does not include liquidation costs.

Without Thomas's equity in the assets, the next issue is the same for both the Motion and the Plan: whether the Plan is feasible and Equity Bank's collateral is necessary for an effective reorganization. The evidence shows the Plan is not feasible, and therefore that Equity Bank's collateral is not necessary for an effective reorganization.

The cash flow analysis of the Plan provides for a $727.24 net capital position at the end of the 2022 calendar year. (Equity Bank. Ex. 26, Amended Plan of Reorganization, Doc. # 84). Moreover, all input expenses of the Plan will be funded through 2022 input financing, as Thomas currently has no capital with which to prime the Plan. (Equity Bank. Ex. 26, Amended Plan of Reorganization, Doc. # 84); (Equity Bank Ex. 20, Thomas CFA Credit Application, Doc. # 115); (Equity Bank Ex. 9, Chad Thomas Deposition, Doc. # 104, 137:13–25). After that, all Plan expenses are paid from the net proceeds of the 2022 crop, leaving a $727.24 net capital position with which to roll into "year 2" of the Plan.

Putting aside the obvious risk that a $727.24 net capital position presents, it is important to understand that *all* expenses of the hypothetical post-confirmation Debtors will be paid by operating debt (and not capital). Thus, if any payment amounts increase, or any problem in the slightest arises, either a post-confirmation creditor or a pre-confirmation creditor does not get paid. To that end, a true look at the amortizations proposed in the Plan indicate that Thomas will actually have a negative net capital position at the end of "year 1" and therefore a creditor is not paid and the reorganization fails.

Compare the annual payment in the Plan with the following amortization figures that are ran with accuracy, assuming an October 21, 2021 confirmation and applicable interest for unsecured creditors:[2]

---

[2] The Plan determines payments to unsecured creditors based on liquidation equity of assets (i.e., the best interests test). Debtors must therefore pay interest on the liquidation equity value under § 1129(a)(7)(A)(ii). *See, e.g., In re*

|            | Plan         | With Discount | Full § 506 Value |
|------------|--------------|---------------|------------------|
| Class 13:  | $91,341      | $92,242       | $95,001.90       |
| Class 14:  | $28,429.33   | N/A           | $28,707.29       |
| Class 15:  | $18,837.17   | $21,510.67    | $24,065.80       |
| Class 19   | $19,665      | N/A           | $23,091.48       |
| Difference:|              | [$2,673.50]   | [$12,593.97]     |

(Equity Bank. Ex. 26, Amended Plan of Reorganization, Doc. # 84); (Equity Bank Ex. 11, Amortization Schedules, Ex. 105). Those problems arise when only considering the payment realities of a few of the classes: Class 13, Class 14, Class 15, and Class 19. When there is a projected $727.24 net capital position margin of error, those differences are not "technicalities" or items to be ignored by giving the Debtors a chance. Those differences represent a Plan that is not feasible and an ineffective reorganization, as post-confirmation creditors or a pre-confirmation creditors will not be paid in full even in the first year.

Of course, Thomas's speculative input credit is an issue as well. Thomas has not identified any bank or lending source that has committed to 2022 input financing. (Equity Bank Ex. 9, Chad Thomas Deposition, Doc. # 104, pg. 112, 137); (Equity Bank. Ex. 26, Amended Plan of Reorganization, Doc. # 84, Article 7). At best, Thomas has submitted a CFA credit application, with no indication other than a hope that it will be granted. (Equity Bank Ex. 20, Thomas CFA Credit Application, Doc. # 115). With no capital available to prime any plan, with a Plan that shows an erroneous projected $727.24 net capital position, and with only a hope of a CFA application being granted, this Plan shows no signs of a "reasonable prospect of success

---

*Dow Corning Corp.*, 237 B.R. 380 (Bankr. E.D. Mich. 1999); *Matter of Rivera*, 116 B.R. 17 (Bankr. D.P.R. 1990). The amount likewise cannot change or decrease to accommodate a better capital position the Debtors. *See* 11 U.S.C. § 1129(a)(7)(A)(ii).

and workability." *In re Monnier Bros.*, 755 F. 2d 1336, 1341 (8th Cir. 1985). There must be some rational likelihood of success. *In re Danny Thomas Prop. II Ltd. P'ship*, 241 F.3d 959, 963 (8th Cir. 2001). In this case, there is not.

Thomas's operation assumes a large amount of acres from a lease from the City of Alliance, Nebraska and the Nebraska Board of School Lands and Funds. The Plan states as follows: "For the 2022 farm year and thereafter Chad Thomas has made arrangements with his father, Donald Thomas, to rent Donald's 155 dryland acres and his 40 acres of grass. **Donald Thomas and wife Rebecca have assigned to Chad 815 acres of grass Donald leases from Alliance; 160 dryland acres on Kirkpatrick place, 55 dryland acres on Meyers place and 560 acres on the school land lease.**" (Equity Bank. Ex. 26, Amended Plan of Reorganization, Doc. # 84, Article 7). The City of Alliance acres and the school land lease acres represent almost half the acres to be farmed under the Plan, and more than $250,000 on gross income under the Plan. (Equity Bank. Ex. 26, Amended Plan of Reorganization, Doc. # 84, Article 7). Yet, both the City of Alliance lease (Equity Bank Ex. 13, City of Alliance Haying Lease, Doc. # 108) and the school land lease (Equity Bank Ex. 14, State of Nebraska BELF Lease, Doc. # 109) require consent to any assignment in writing by the landlord. *See also* Neb. Rev. Stat. § 72-234.02. Thomas does not have those consents (and likely will not for some time due to lack of rent payment), and is speculating at best as to whether assignments will occur.

This is also the second plan proposed by Thomas. These same issues were raised on the first plan (Equity Bank Ex. 27, Plan of Reorganization, Doc. # 57), and Thomas seemingly has no ability to address them in a manner that meaningfully bolsters the feasibility of the Plan.

Thus, the Plan is not feasible and the collateral of Equity Bank for which Thomas has no equity is not necessary for an effective reorganization.[3] Confirmation of the Plan should be denied under § 1129(a)(11) (as incorporated into Subchapter V) and the Motion should be granted under § 362(d)(2).

2. **Other Issues of the Plan**

The second issue in this Brief is that the Plan as proposed cannot be confirmed under other non-feasibility provisions of the Bankruptcy Code.

Section 1129(a)(9)(C) provides that the Plan must pay priority tax debt in full. The IRS in these cases has filed Claim 3-1 (Equity Bank Ex. 21, IRS Claim, Claim # 3-1), showing $83,249.38 in priority tax debt. The Plan, however, only addresses $48,524 in priority tax debt in Class 4 and Class 5. (Equity Bank. Ex. 26, Amended Plan of Reorganization, Doc. # 84, Article 4.01). That IRS claim must be paid unless stipulated otherwise by the United States or determined otherwise by an adversary proceeding. Thomas has provided no evidence of either action. The Plan thus cannot be confirmed under § 1129(a)(9)(C).[4]

Section 1129(a)(7)(B) provides that the Plan must pay Equity Bank (as the holder of a secured claim) the secured amounts of its claims, which as discussed above is the value of Equity Bank's collateral in real estate, lease payments, miscellaneous equipment, and a CASE IH tractor. The Plan does not do that. The Plan attempts to discount the value of the real estate and the CASE IH tractor by separate rent payments to which Equity Bank is entitled as separate collateral of Thomas (an "account" or "account receivable asset" of Thomas). The right to rent

---

[3] Equity Bank reserves the right to address and argue other evidence presented on feasibility at the hearing, including tax returns and previous activities of the Debtors that show an inability to operate at a profit and pay debts as they come due.

[4] Also, increasing priority tax debt increases debt service, which (as discussed above) stresses the already thin capital margin and results in a negative capital position at the end of year 1.

payments arose pre-petition,[5] and is therefore not subject to the post-petition lien-stripping of the bankruptcy code. Thomas admits the full values of the real estate and the CASE IH tractor to be $1,293,060 and $120,000, respectively, and therefore must pay for the full value of each under § 506 and § 1129(a)(7)(B). (Equity Bank Ex. 26, Amended Plan of Reorganization, Doc. # 84). The Plan thus cannot be confirmed under § 1129(a)(7) or § 1191(b).

The Plan also does not follow § 1191(c)(2)(B), as it does not provide any analysis for income projections in years 2 through 5. (Equity Bank Ex. 26, Amended Plan of Reorganization, Doc. # 84). The Plan must provide at least the amount of projected disposable income for that time-frame. Creditors and the Court are unable to determine that amount because the Plan does not project it. The Plan thus cannot be confirmed under § 1191(c)(2)(B).

3.    **"Cause" for Relief and Denial of Confirmation under Bad Faith**

The third issue is also two-fold, whether the evidence shows both cause for relief under § 362(d)(1) and lack of good faith under § 1192(a)(3). There are a number of red flags in this case, and the evidence shows there are sufficient facts to establish a lack of good faith:[6]

    a.    Thomas has been provided a two-year opportunity to refinance and restructure. Thomas has not done so. (Equity Bank Ex. 3, Affidavit of Clay Madden, Doc. # 35, ¶¶ 5, 6, 7, 8, 9, 10. 13, Ex. C, E). Two years of forbearance agreements have failed.

    b.    In that time, Thomas has (i) failed to pay any real estate taxes current; (ii) failed to sell equipment as promised until the Motion was filed; (iii) failed to make payments as promised;[7] (iv) failed to liquidate assets as promised until the Motion was filed;[8] (v) leveraged

---

[5] The lease was executed May 4, 2021 for the March 1, 2021 to February 28, 2022 growing year, before the May 7, 2021 petition date. ((Equity Bank Ex. 10, Chad Thomas Deposition Exhibits Doc. # 105, Ex. 21); (Equity Bank Ex. 7, Affidavit of Adam Hoesing, Doc. # 43, Ex. C).
[6] Equity Bank reserves the right to address and argue other evidence on bad faith not argued in this Brief but presented at the hearing.
[7] (Equity Bank Ex. 3, Affidavit of Clay Madden, Doc. # 35, Ex. C, E).
[8] (Equity Bank Ex. 3, Affidavit of Clay Madden, Doc. # 35).

broken promises for additional forbearance;[9] (vi) misrepresented asset ownership, only to "fix" or "cure" the issue after in-depth deposition of Chad Thomas;[10] (vii) not provided collateral proceeds as promised;[11] (viii) failed to refinance or even attempt to refinance as needed;[12] (ix) failed to list more than $360,000 in gross capital income on his 2020 tax return.[13]

Most recently, the forbearance agreements required Thomas to provide all crop proceeds in 2019 and 2020 (subject to a few agreed-upon exceptions) to Equity Bank's predecessor in interest. But the 2020 tax returns and the 2020 financials on which the tax returns were based show Thomas had over $211,000 of crop sales from hay in 2020, which was not provided to Equity Bank or Equity Bank's predecessor in interest. (Equity Bank Ex. 15, 2020 Approved Tax Return Signature Page, Doc. # 110); (Equity Bank Ex. 16, CD Thomas Farms, LLC 2020 Approved Tax Return, Doc. # 111); (Equity Bank Ex. 18, Thomas 2020 Tax Return Financial Background Information, Doc. # 113). While Thomas will likely argue the information was accounted for mistakenly, the information was signed off by Chad Thomas under penalty of perjury to the IRS. (Equity Bank Ex. 15, 2020 Approved Tax Return Signature Page, Doc. # 110).

Moreover, the inconstancies of asset ownership, while "fixed", speak or themselves. Chad Thomas admits he misrepresented asset ownership to Almena State Bank, regardless of who "advised" him to do that. (Equity Bank Ex. 10, Chad Thomas Deposition Exhibits, Doc.

---

[9] (Equity Bank Ex. 3, Affidavit of Clay Madden, Doc. # 35).
[10] (Equity Bank Ex. 3, Affidavit of Clay Madden, Doc. # 35); (Equity Bank Ex. 9, Chad Thomas Deposition, Doc. 104); (Equity Bank Ex. 10, Chad Thomas Deposition Exhibits, Doc. 105).
[11] (Equity Bank Ex. 3, Affidavit of Clay Madden, Doc. # 35); (Equity Bank Ex. 15, 2020 Approved Tax Return Signature Page, Doc. # 110); (Equity Bank Ex. 16, CD Thomas Farms, LLC 2020 Approved Tax Return, Doc. # 111); (Equity Bank Ex. 18, Thomas 2020 Tax Return Financial Background Information, Doc. # 113).
[12] (Equity Bank Ex. 9, Chad Thomas Deposition, Doc. # 104, 112:13–114:8).
[13] (Equity Bank Ex. 15, 2020 Approved Tax Return Signature Page, Doc. # 110); (Equity Bank Ex. 16, CD Thomas Farms, LLC 2020 Approved Tax Return, Doc. # 111); (Equity Bank Ex. 28, September 2020 BigIron Sale Results, Doc. # 119).

105, Deposition Ex. 16); (Equity Bank Ex. 9, Chad Thomas Deposition, Doc. # 104, 37:6–48:6). He then doubled-down on that misrepresentation in January of 2020, this time without the "advice" of any bank representative, when he provided the balance sheets that are Exhibit D to the Clay Madden affidavit. (Equity Bank Ex. 10, Chad Thomas Deposition Exhibits, Doc. 105, Deposition Ex. 16); (Equity Bank Ex. 3, Affidavit of Clay Madden, Doc. # 35, ¶¶ 10, 11, 12, Ex. D).

The Thomas petitions were filed on the eve of Equity Bank exercising in the state-court, and there does not appear to be any other creditor that was forcing the issue and causing the bankruptcy filing. (Equity Bank Ex. 8, Transcript of Section 341 Meeting, Transcript, Doc. 44, 32:6–21). The filings were for the sole purpose of preventing rights that Equity Bank holds to collateral and collection. (Equity Bank Ex. 8, Transcript of Section 341 Meeting, Transcript, Doc. 44, 32:6–21).

Previously, real estate collateral was transferred to Andrew Thomas without the consent of Almena State Bank or Equity Bank (Equity Bank Ex. 6, Affidavit of Wendy Fritzler, Doc. # 42; Ex. A); (Equity Bank Ex. 2, Affidavit of Tim Kerr, Doc. # 34, Ex. E).

Equity Bank reserves the right to better address these factual allegations at the hearing, but there is enough evidence argued herein to establish lack of good faith, necessitating relief of the automatic stay and denial of Plan confirmation. Put simply, Equity Bank has been patient, and while Thomas has addressed some concerns through liquidation of Equity Bank collateral, Thomas as shown no ability to follow through on promises and adequately protect Equity Bank's interests.

## Conclusion

Wherefore, Equity Bank requests the Motion be granted, confirmation of the Plan denied, and other just and equitable relief, as argued above.

DATED: October 15, 2021.

                                              Equity Bank,
                                              Creditor.

                                              By: _____
                                                  (One of Its Attorneys)

                                              Adam Hoesing, NSBA # 24938
                                              Simmons Olsen Law Firm, P.C., L.L.O.
                                              1502 Second Ave.
                                              Scottsbluff, NE 69361
                                              (308) 632-3811