| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **Chad W Thomas & Lisa K Thomas (Lead Case) & CD Thomas Farms, LLC** |
| United States Bankruptcy Court for the: | DISTRICT OF NEBRASKA |
| Case number (if known) | **21-40519 (Lead Case) & 21-20520** |

☑ Check if this is an amended filing

Official Form 425A

# 2nd Amended Plan of Reorganization for Small Business Under Chapter 11
### 02/20

**Debtors' 2nd Amended Plan of Reorganization for Small Business Under Chapter 11, Dated <u>November 1, 2021.</u>**

[If this plan is for a small business debtor under Subchapter V, 11 U.S.C. § 1190 requires that it include "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." The Background section below may be used for that purpose. Otherwise, the Background section can be deleted from the form, and the Plan can start with "Article 1: Summary"] This Amended Plan of Reorganization amends and supersedes the Debtors' Plan of Reorganization dated July 8, 2021, and filed as Doc No. 57.

**Background for Cases Filed Under Subchapter V**

### A. Description and History of the Debtor's Business

The Debtors herein consist of Chad W. Thomas and Lisa K. Thomas, husband and wife, in Case No. 21-40519 and CD Thomas Farms, LLC, in Case No. 21-40520. These cases have been ordered to be joined administratively by Order of this Court enter on June 30, 2021.

<u>HISTORY OF DEBTORS' FARMING BUSINESS AND FINANCIAL AFFAIRS</u>

1. Chad Thomas is 47 years of age and he and Lisa have two sons, ages 18 and 14. They reside in rural Box Butte County, Nebraska, near Alliance. Chad is the son of Donald and Rebecca Thomas and was born and raised on a farm. His primary occupation, through his working life, has been as a farmer, and in the past he has also raised cattle. Lisa is a beautician and works in Alliance at a beauty shop. Throughout the years Chad has often been engaged in partnership farming with his dad, Donald. In 2014 they formed CD Thomas Farms, LLC, and each held a one-half interest in that limited liability company. In 2017, Donald withdrew from that limited liability company and the entity was then owned equally by Chad and Lisa. Chad owns three pivot, irrigated quarter section of farmland, which are planted in winter wheat, alfalfa, and pinto beans. CD Thomas Farms, LLC, owns a quantity of farm equipment.

2. In 2018, Chad Thomas had difficulties paying off the line of credit he had with Almena State Bank, and other obligations owed to that bank. For farming years 2019 and 2020, Chad operated under Forbearance Agreement(s) with Almena State Bank.

3. Before banking with Almena State Bank of Almena, Kansas, predecessor to Equity Bank, the Debtors had a previously had a banking relationship with Farmers' State Bank of Wallace, at North Platte, Nebraska, which became First Security Bank. Prior to or during 2016, the Debtors' loan officer at Farmers' State Bank, left to take a similar position with Almena State Bank and he took some of his loan account customers with him, including the Debtors. At that time Chad and Donald were conducting their farming operation under CD Thomas Farms, LLC. After Donald withdrew, Chad's farming continued with the limited liability company.

4. Chad and Donald's farming in 2019 and 2020, was done under Forbearance Agreement(s) with Almena State Bank, but they were not able to satisfy the terms of those agreements in those years. In the fall of 2020, Almena State Bank failed and was taken over by FDIC. Equity Bank purchased the assets of the bank from FDIC, which included the "note cage," and Equity Bank then held the promissory notes, guarantees and security agreements of the Debtors. Shortly after acquiring those assets, Equity Bank issued, filed and served Notice(s) of Default and later Notice of Sale to occur in June, 2021, and also filed a replevin action in the Box Butte County District Court in May, 2021, requesting the right to obtain all of the Debtors' equipment. In response to those actions, the Debtors filed these two bankruptcy cases on May 7, 2021.

5. Because the Debtors could not obtain funding for their farming operations in 2021, and prior to their bankruptcy filings, Chad Thomas, and his father, Donald Thomas, entered into a Lease and Employment Agreement for the 2021 farm year that provided a payment of $25,148.00 for the use of the Chase IH Magnum Tractor, owned by CD Thomas Farms, LLC, and secured to Equity Bank. The lease also provides for payment by Donald Thomas of $75,600.00 for the lease of all of the Debtors' farmlands for 2021, which land is also secured to Equity Bank. The Debtors agreed that as they received those payments from Donald Thomas, the Debtors agreed to turn over the $25,148.00 to Equity Bank for the adequate protection payment to cover the lease and use of the Chase IH Magnum Tractor and use of other equipment for the 2021 farm year and turn over to Equity Bank the $75,600.00 lease payment as adequate protection for the 2021 use of the Debtors' farmland.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. Two liquidation analysis schedules are attached hereto as Exhibits "1.1" and "1.2."

The Debtors propose to pay their creditors by a combination of sale of equipment that is not essential for the Debtors' farming operations in 2022 and beyond and restructuring of certain debts, with installment payments from future farming income of the Debtors. This Plan provides for classes of priority claims, secured claims and unsecured and under-secured claims; and a class of equity security holders.

### C. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

Debtor   **Chad W Thomas**                                                    Case number (*if known*)   **21-40519**
         **Lisa K Thomas**
         _____
         Name

The Plan Proponents' financial projections, two Cash Flows are attached hereto as Exhibits "2.1" and "2.2."

The Plan Proponent's financial projections show that the Debtor will have no projected disposable income, as all income is incorporated in the Cash Flow and accounted for through the itemized expense, except for $57.57 per year for 2022 through 2026.

The final Plan payment is expected to be paid on December 31, 2029.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### Article 1: Summary

This Amended Plan of Reorganization (the "*Plan*") under Chapter 11, Sub. V, of the Bankruptcy Code (the *Code*) proposes to pay creditors of the Debtors from cash flow from farming , sale of assets and any other future income available to Debtors

This Plan provides for:     __11__   classes of priority claims;

                              __6__   classes of secured claims;

                              __2__   classes of non-priority unsecured claims; and

                              __1__   classes of equity security holders.

Non-priority unsecured under-secured creditors, who have timely filed Proof(s) of Claim, holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately $0.07 cents on the dollar, *i.e.* 7.166%. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Article 2 of this Plan for information regarding the precise treatment of their claim. The Debtors believe they have provided sufficient information in this Plan, and exhibits hereto, to sufficiently inform all secured creditor, unsecured creditors, the Court, and all other parties in interest so that no disclosure statement has been filed with the Court or submitted with this Plan.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1 to Class 11** | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), ["gap" period claims in an involuntary case under § 507(a)(3)]<br>[Add classes of priority claims, if applicable] |
| 2.02 | **Class 12 to Class 17** | The Claims from 5 to 12 should be allowed, to the extent allowed as secured claims under § 506 of the Code.<br><br>[Add other classes of secured creditor, if any. *Note*: Section 1129(a)(9)(D) of the Code provides that a secured tax claim which would otherwise meet the description of a priority tax claim under § 507(a)(8) if the Code is to be paid in the same manner and over the same period as prescribed in § 507(a)(8).] |
| 2.03 | **Class 18 to Class 19** | All non-priority unsecured claims allowed under § 502 of the Code. |
| 2.04 | **Class 20** | Equity interests of the Debtor. (If the Debtor is an individual, change this heading to *The interests of the individual Debtor in property of the estate.*) |

### Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims, ["gap" period claims in an involuntary case allowed under § 502(f) of the Code,] and priority tax claims are not in classes, except as otherwise provided herein. The Debtors believe there are no unclassified claims. |
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim allowed under § 503 of the Code, [and a "gap" claim in an involuntary case allowed under § 502(f) of the Code,] will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.<br><br>Or<br><br>Each holder of an administrative expense claim allowed under § 503 of the Code, [and a "gap" claim in an involuntary case allowed under § 502(f) of the Code,] will be paid [specify terms of treatment, including the form, amount, and timing of distribution, consistent with section 1191(e) of the Code].<br><br>[Note: the second provision is appropriate only in a subchapter V plan that is confirmed non-consensually under section 1191(b).] |
| 3.03 | **Priority tax claims** | Each holder of a priority tax claim will be paid consistent with § 1129(a)(9)(C) of the Code. |
| 3.04 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |

Debtor   **Chad W Thomas**
**Lisa K Thomas**
<small>Name</small>

Case number (if known) **21-40519**

---

**Article 4: Treatment of Claims and Interests Under the Plan**

---

4.01   Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1 - Priority/Statutory claim of United States Trustee** | Unimpaired | The Debtors are not obligated to pay any statutory quarterly fees to the Office of the United States Trustee, under this Chapter of the Bankruptcy Code. Among other obligations, the Debtors are required to submit monthly operating reports to the Office of the United States Trustee. |
| **Class 2 - Priority/Administrative claim for Donald Swanson** | Unimpaired | Donald Swanson is the court appointed Chapter 11, Sub. V. Trustee and is entitled to a reasonable fee and any costs for his service as Trustee. Subject to such fees and costs being approved by the Court, the Debtors propose to pay the allowed amounts on the effective date of the Plan, or as otherwise agreed. |
| **Class 3 Priority/Administrative claim for Counsel for Debtors** | Unimpaired | Allen L. Fugate and Wayne E. Griffin have been engaged by the Debtors to act as their Counsel in the two bankruptcy cases, now administratively joined. Application for their engagement was filed and has been approved by the Court. Any and all fees and costs for their services shall be approved by the Court and paid on the effective date of the Plan or as otherwise agreed |
| **Class 4 - Priority Claim for Internal Revenue Service** | Impaired | The Internal Revenue Service is entitled to a priority tax claim for FICA due within three years of filing bankruptcy in the amount of $38,857.00 plus $955.38 in interest, which the Debtors agree to pay in five (5) equal, annual installments of $8,693.22, including interest computed at the rate of 3%. First payment by December 31, 2022, and annually. |
| **Class 5 - Priority claim for Box Blutt County Treasurer** | Impaired | The Debtors are obligated for delinquent personal property taxes due in the amount of $326.98, plus interest in the statutory rate of 14%, which they agree to pay in three (3) equal annual installments of $140.84. First payment by December 31, 2022, and annually. |
| **Class 6 - Priority claim for Box Blutt County Treasurer** | Impaired | The Debtors are obligated to the Box Butt County Treasurer for delinquent real property taxes for the SE1/4 of 26-25-49 in the amount of $4,820.36, plus any accrued interest, which the Debtors will pay in three (3) annual installments of $2,076.28, with statutory interest of 14%. First payment by December 31, 2022, and annually. |
| **Class 7- Priority claim for KLM Retirement Planning, LLC** | Impaired | The Debtors are obligated to KLM Retirement Planning, LLC, the holder of Tax Sale Certificate and payment of subsequent real property taxes, for taxes for the SE1/4 of 26-25-49 in the amount of $11,162.65, plus any accrued interest, which the Debtors will pay in three (3) annual installments of $4,808.10, with statutory interest of 14%. First payment by December 31, 2022, and annually. |
| **Class 8 - Priority claim for Box Butte County Treasurer** | Impaired | The Debtors are obligated to the Box Butte County Treasurer for delinquent real property taxes for the SW1/4 5-25-49 in the amount of $2,127.55, plus any accrued interest, which the Debtors will pay in three (3) annual installments of $752.15, with statutory interest of 14%. First payment by December 31, 2022, and annually. |
| **Class 9 - Priority claim for Greg Royle** | Impaired | The Debtors are obligated to Greg Royle, the holder of Tax Sale Certificate and payment of subsequent real property |

Debtor   **Chad W Thomas**
         **Lisa K Thomas**
         _____
         Name

Case number *(if known)*  **21-40519**

taxes, for taxes for the SE1/4 of 5-25-49 in the amount of $12,586.06, plus any accrued interest, which the Debtors will pay in three (3) annual installments of $5,421.21, with statutory interest of 14%.  First payment by December 31, 2022, and annually.

| | |
|---|---|
| **Class 10 - Priority claim for Box Butte County Treasurer**  Impaired | The Debtors are obligated to the Box Butt County Treasurer for delinquent real property taxes for the SW1/4 of 26-25-49 in the amount of $2,267.76, plus any accrued interest, which the Debtors will pay in three (3) annual installments of $976.80, with statutory interest of 14%. First payment by December 31, 2022, and annually. |

**Class 11 - Priority claim for Linda Green**   Impaired

The Debtors are obligated to Linda Green, the holder of Tax Sale Certificate and payment of subsequent real property taxes, for taxes for the SW1/4 of 26-25-49 in the amount of $13,492.69, plus any accrued interest, which the Debtors will pay in three (3) annual installments of $5,811.73, with statutory interest of 14%.  First payment by December 31, 2022, and annually.

**Class 12 - Secured claim of Equity Bank on Debtors' farmland**   Impaired

 Equity Bank lien on farmland. The bank has a lien on approximately 480 acres of farmland owned by Chad Thomas of which approximately 375 acres is pivot, irrigated farmland.  The rest is dryland, roads, and waste.  The appraised value of all cropland, including irrigated and dryland, is $1,293,060.  The Debtors have agreed to pay the Bank the valued amount, less pre-petition real estate taxes, as the Bank has agreed in the Stipulation, attached hereto and incorporated herein as Exhibit "3" at 5.1.2 of Exhibit "3." The specific treatment of this creditor's claims are contained in the Stipulation, Exhibit "3" hereto, filed October 31, 2021, at Doc.157.

**Class 13 - Secured claim of Equity Bank on Debtor's farm equipment, Dodge Ram pickup and 2 Peterbilt trucks**   Impaired

 Equity Bank Lien on farm equipment, 2000 Dodge Ram pickup and 2 Peterbilt trucks. Equity Bank has a first lien on the Debtors' farm machinery the Debtors wish to retain, a 2000 Dodge Ram pickup, a 2000 Peterbilt truck and a 1994 Peterbilt truck, all of which has a total appraised value of $143,152.00. See Ex. 1, Liquidation Analysis for a complete list of retained equipment.  The Debtors have agreed to pay the Bank the valued amount as the Bank has agreed to in the Stipulation, attached hereto and incorporated herein as Exhibit "3," at 5.1.3 of Exhibit "3."  The specific treatment of this creditor's claims are contained in the Stipulation, Exhibit "3" hereto, filed October 31, 2021, at Doc.157.

**Class 14 - Secured claim of Equity Bank on Case IH Magnum Tractor**   Impaired

Equity Bank lien on Case IH Magnum Tractor. Equity Bank has a first lien on the Debtors' Case IH Magnum Tractor This tractor was the subject of a 2017 purchase with funds from Almena State Bank on SBA Note No. xxx407. Equity Bank also has a general perfected lien through its Security Agreement and Financing Statement covering all farm equipment.  The Debtors have agreed to pay the Bank the appraised value of the Case IH Magnum Tractor in the amount of $120,000.00, as the Bank has agreed to in the Stipulation, attached hereto and incorporated herein as Exhibit "3," at 5.1.4 of Exhibit "3."  The specific treatment of this creditor's claims are contained in the Stipulation, Exhibit "3" hereto, filed October 31, 2021, at Doc.157.

**Class 15 - Secured claim of Nationstar/Mr. Cooper on Debtors' residence**   Unimpaired

Nationstar/Mr. Cooper has a first lien on the Debtors' residence located on 5.21 acres of land at 6690 Otoe Road, Alliance, NE 69301.  This creditor is owed the sum of approximately $66,236, less credit for any further payments made by the Debtors.  This creditor is fully secured on the subject property which the Debtors value at $250,000.  The Debtors propose and intend to honor their original contract obligations with this creditor and continue making the monthly payments now in the amount of $1091.37, which includes a property tax escrow.  This claim is not impaired.

Debtor    **Chad W Thomas**
**Lisa K Thomas**
<br>Name

Case number (if known) **21-40519**

| | | |
|---|---|---|
| **Class 16 - Secured claim of JP Morgan Chase on Debtors' 2016 GMC Sierra Pickup** | Unimpaired | <u>JP Morgan Chase has a lien on the 2016 GMC Sierra Pickup.</u> This creditor was owned the sum of $12,161.00 as of date of filing and the Debtors propose to continue to pay this creditor the contract payments of $697.00 per month until the obligation is paid in full, when the Debtors shall be entitled to a release of this creditor's lien on the GMC pickup. The pickup is valued at $22,000.00 and this claim is not impaired. The Debtors have the right to claim an exemption of $5,000.00 under §1556 and an exemption of $4,839.00 under §1552. |
| **Class 17 - Secured claim of US Bank, NA, on Debtors' 2015 Chevrolet Suburban** | Unimpaired | <u>U.S. Bank, NA, has a lien on the 2015 Chevrolet Suburban.</u> This creditor is owned the sum of $13,225.00 as of date of filing and the Debtors propose to continue to pay this creditor the contract payments of $766.00 per month until the obligation is paid in full, when the Debtors shall be entitled to a release of this creditor's lien on the Chevrolet Suburban. This vehicle is valued at $15,000.00 and this claim is not impaired. The Debtors have the right to claim an exemption of $1,775.00 under §1552. |
| **Class 18 – Non-priority unsecured creditors** | Impaired | The allowed claims of unsecured creditors, who have filed Proof(s) of Claim, and the allowed unsecured portion of secured claims shall be entitled to payment in the amount of the value of the Debtors' equity not subject to secured claims or allowed exemptions. Total unsecured claims filed and the under-secured portion of the Equity Bank claim total $816,536.00. The unprotected equity is to be determined from the Debtors' Liquidation Analysis (Exhibit "1.1" hereto) and is in the amount of $58,513.00. The payment shall be divided equally over five years in five (5) annual payments of $11,703.00 with the first payment to creditors due by December 31, 2022, and annually. Return to unsecured and under-secured creditors is approximately 7.166% |
| **Class 19 - Non-priority unsecured creditor of CD Thomas Farms, LLC, only** | Impaired | Prairie Sky Seeds, Inc., has filed a Proof of Claim in the Chad and Lisa Thomas case in the amount of $31,361.48 described as a judgment entered September 30, 2020. The Order for judgment attached to the POC is against CD Thomas Farms, LLC, as the case against Chad Thomas had been dismissed at the request of Prairie Sky Seeds, Inc. The Claimant has an unsecured claim in the case of CD Thomas Farms, LLC, No. 21-40520, but not in 21-40519. For purposes of Claimant's unsecured claim, the Debtors have attached Exhibit "1.2" of a Liquidation Analysis expressly limited to the assets and liens in Case No. 21-40520. See Exhibit "2.2" Cash Flow for CD Thomas Farms, LLC, for years 2021 through 2026. |
| **Class 20 - Equity security holders of the Debtors** | Unimpaired | The Debtors shall retain all of the equity in their residential land and improvements, farmland and improvements, and in all personal property, including farm machinery and vehicles, and in their right of possession, except as expressly provided for in this Plan. |

### Article 5: Allowance and Disallowance of Claims

| 5.01 | **Disputed Claim** | A *disputed claim* is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: |
|---|---|---|
| | | (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or |
| | | (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is allowed [by a final non-appealable order]. |
| 5.03 | **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

### Article 6: Provisions for Executory Contracts and Unexpired Leases

Debtor  **Chad W Thomas**
        **Lisa K Thomas**
        Name

Case number *(if known)*  **21-40519**

| 6.01 | **Assumed executory contracts and unexpired leases** | (a) The Debtors assume, and if applicable assign, the following executory contracts and unexpired leases as of the effective date: Lease and Employment Agreement with Donald Thomas. |

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 15 days after the date of the order confirming this Plan.

### Article 7: Means for Implementation of the Plan

For the 2021 farm year, the Debtors will operate in accordance with the Lease and Employment Agreement entered into by Chad Thomas with father, Donald Thomas; with additional earnings of Lisa Thomas, who is employed as a beautician.

For the 2022 farm year and farm years thereafter, the Debtors will operate their farming enterprise as indicated in their Cash Flow Analysis (Exhibit "2" hereto), with additional earnings of Lisa Thomas, employed as a beautician. For the 2022 farm year and thereafter Chad Thomas has made arrangements with his father, Donald Thomas, to rent Donald's 155 dryland acres and his 40 acres of grass. Donald Thomas and wife Rebecca have already assigned, in writing, to Chad 815 acres of grass Donald leases from Alliance to harvest grass hay;160 dryland acres on Kirkpatrick place, 55 dryland acres on Meyers place and 560 acres on the school land lease, where there is 458 acres of pivot irrigation and 102 acres of pasture

Chad Thomas shall be working with local coops and the electrical company for 2022 and after to obtain crop inputs of seed, fertilizer, chemicals, and fuel, and electrical service. He has also applied for a loan from the Cooperative Finance Association of Kansas City for operating assistance, and will seek other opportunities from banks and from other sources to obtain the best terms available. Chad does not intend to buy seed, chemical, fertilizer and other costs of operation without doing comparative shopping. He will also keep current with the market and futures for crops and seek advise to make sure he getting the best price that will guarantee return to cover crop expenses and debt payments and do the same with crop insurance. Chad claims he has learned a great deal from his experience with Almena State Bank and how they did business, handled agreements and loan documents and terms. In the future he will be sure to understand the terms of loan documents and demand written agreements to avoid the type of misunderstandings that have contributed to the extent of debt and conflict he has faced in this reorganization case.

[Insert here provisions regarding how the plan will be implemented as required under § 1123(a)(5) of the Code. For example, provisions may include those that set out how the plan will be funded, including any claims reserve to be established in connection with the plan, as well as who will be serving as directors, officers or voting trustees of the reorganized Debtor.]

### Article 8: General Provision

| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: |
| 8.02 | **Effective Date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect:** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |

Debtor  **Chad W Thomas**
    **Lisa K Thomas**
    <sub>Name</sub>

Case number *(if known)*  **21-40519**

| | | |
|---|---|---|
| [8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Nebraska govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| [8.07 | **Corporate Governance** | The management of the Debtor, CD Thomas Farms, LLC, will continue to be provided by Chad Thomas, as Managing Member. Decisions over and above general management shall be made by the equal owners, Chad Thomas and Lisa Thomas. |
| | | *[If the Debtor is a corporation include provisions required by § 1123(a)(6) of the Code.]* |
| [8.08 | **Retention of Jurisdiction** | The bankruptcy court's jurisdiction after the effective date of the Plan shall continue as necessary to implement the Plan. |

**Article 9: Discharge**

**The following provisions applies to a discharge for Debtors, Chad Thomas and Lisa Thomas:**

If the Debtors' Plan is confirmed under §1191(a) of the Code, the Debtors, Chad Thomas and Lisa Thomas, shall be entitled to a discharge of any indebtedness from a debt that arose before confirmation of the Plan, as provided in §1141(d)(1)(A) of the Code, but not from any debt imposed by the Plan or to the extent provided in §1141(d)(6).

**The following provisions applies to a discharge for Debtor, CD Thomas Farms, LLC, that was organized and operated as a partnership:**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt imposed by this Plan.

If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192;

      or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**Article 10: Other Provisions**

**A. Retained liens.** All secured creditors shall retain their lien in the property indicated herein until the agreed Plan payment to the secured creditor is satisfied. All secured creditors shall be entitled to a security interest on any replacement or substitution of the property presently secured to any said creditor. The Debtors agree not to permit waste on any real property or personal property secured to any creditor and to keep all real property and personal property in a good state of repair, ordinary wear and tear excepted. The Debtors shall pay all taxes and assessments against real property and personal property secured to any creditor before same becomes delinquent. Upon payment of the amount of each secured claim in full in the manner provided in the Plan, the lien of the secured creditor shall be deemed satisfied in full and released and each secured creditor holding a secured claim that is paid in full shall cooperate by releasing all liens of record. Any undersecured portion of any such creditor's claim shall be subject to the discharge provisions of this Plan.

**B. Default.** The failure of the Debtors to make any payment of principal and interest when due as provided herein shall be an event of default under this Plan. The failure of the Debtors to do and perform any other act or agreement herein contained and provided for shall be an event of default. In the event of default, written notice of such default shall be given by any creditor to the Debtors specifying the default. Debtors shall have 30 days after the receipt of such notice of default to cure the same. If the Debtors fail to cure any event of default then any creditor shall have all rights which may be allowed to it by law in the event of any default by the Debtors, including requesting relief from the automatic stay, the right to foreclose its lien or liens in the manner allowed by law and pursuant to any applicable mortgages, deeds of trust, security agreements and any other agreements to the extent such are not inconsistent with provisions of this Plan or applicable bankruptcy law.

**C. Prepay.** Debtors may prepay any obligation provided to be paid in this Plan in increments of not less than $1,000.00, or in full where the balance is less than $1,000.00, at anytime without penalty or order of Court in the sole discretion of the Debtors.

**D. Recompute.** Debtors may recompute payments to satisfy additional interest on debts or to take into account pre-payments.

**E. Insurance coverage on secured property.** The Debtors agree to maintain standard fire and extended coverage on all property held as collateral by the secured creditors for the replacement value thereof, with the respective creditors noted to be loss payees as their interests may appear.

**F. Distribution to unsecured and under-secured creditors.** No distribution under this Plan shall be made to unsecured and under-secured creditors unless those creditors have filed a Proof of Claim with the Court.

**G. Transfer interest in limited liability company.** The Debtor Lisa Thomas may transfer her membership units in the C D Thomas Farms, LLC, to the Debtor Chad Thomas to make it a single member LLC, which will eliminate the expense of filing annual partnership tax returns, federal and state.

Debtor   **Chad W Thomas**
**Lisa K Thomas**
Name

Case number (*if known*)  **21-40519**

Respectfully submitted,

*X*  **/s/ Chad W Thomas**
[Signature of the Plan Proponent, Chad W. Thomas]

**Chad W. Thomas**
[Printed name]

*X*  **/s/ Lisa K Thomas**
[Signature of the Plan Proponent, Lisa K. Thomas]

**Lisa K. Thomas**
[Printed name]

*X*  **/s/ Chad W Thomas, Managing Member**
[Signature of the Plan Proponent, Chad W. Thomas,
Managing Member, CD Thomas Farms, LLC]

**Chad W. Thomas, Managing Member**
[Printed name]

*X*  **/s/ Wayne E. Griffin**
[Signature of the Attorney for the Plan Proponent]

**Wayne E. Griffin, 17518 NE**
[Printed name]

*X*  **/s/ Allen L. Fugate**
[Signature of the Attorney for the Plan Proponent]

**Allen L. Fugate 16838 NE**
[Printed name]

EXHIBIT "1.1"
LIQUIDATION ANALYSIS for
CHAD W. THOMAS, LISA K. THOMAS and CD THOMAS FARMS, LLC

| ASSET DESCRIPTION | MARKET VALUE | LIEN(S) | DEBTORS' EXEMPT/EQUITY |
|---|---|---|---|
| 1. Debtors' residence on 5.1 acres with home and other improv'ts. The Debtors' valuation from Sch A/B | $250,000 | Nationstar $66,236 | $60,000 exempt $123,764 equity* |
| 2. SW4 26-25-49 (156.25) SW4 5-25-49 (159.49) SE4 26-25-49 (161.52) Butte County, Nebraska | $1,293,060 | Box Butte Treasurer $2,268 SW4, S26 Box Butte Treasurer $4,256 SW4, S 5 Box Butte Treasurer $4,733 SE4, S26 Linda Green       $13,493 SW4 S26 Greg Royle        $12,587 SW4, S5 KLH Retire'tPlan'g$11,163 SE4 S26  Equity Bank $1,244,560 | |
| 3. Farm Equipt, 2000 Dodge Ram & 2 Peterbilts. See Ex A attached | $143,152 | Box Butte Treasurer $327 Equity Bank $142,825 | |
| 4. Case IH Magnum Tractor | $120,000 | Equity Bank $120,000 | |
| 5. 2016 GMC Sierra pickup | $22,000 | JP Morgan Chase $12,161 | $5,000 exempt S1556 $4,839 exempt S1552 |
| 6. 2015 Chevy Suburban | $15,000 | USBank  $13,225 | $1,775 exempt S1552 |
| 7. Debtors' furniture, furnishings, appliances, and misc. household goods | $5,000 | | $5,000 exempt |
| 8. 2 tv sets, computer, printer, and accessories | $900 | | $900 exempt |
| 9. Winchester 12 guage and Ruger .22 rifle | $200 | | $200 exempt |
| 10. Chad's clothing & effects | $1,000 | | $1,000 exempt |
| 11. Lisa's clothing & effects | $1,000 | | $1,000 exempt |
| 12. First National Bank checking & cash | $300 | | $300 exempt |
| 13. NY Life Ins. Co. for Chad and Lisa | $20,580 | | $20,580 exempt 44-371 & 1089 |
| TOTALS | $1,872,192.00 | $1,647,834.00 | $60,000 exempt $123,764 equity* |

**Exhibit "1.1"** - Page 1

LIQUIDATION ANALYSIS

| | | | |
|---|---|---|---|
| Equity in residence, not exempt | | | $123,764* |
| Equity in personal property, not exempt | | $0.00 | |
| Residence auction expense 6% | $15,000 | | |
| Chapter 7 Trustee's fees & | $9,439 | | |
| Trustee's attorney fees (est) | $1,000 | | |
| TOTAL liquidation expense | $25,439 | | $25,439 |
| TOTAL equity less liquidation expense | | | $98,325 |
| | | | |
| LESS IRS Priority Claim for FICA | | | $39,812 |
| $38,857 & $955 | | | |
| | | | |
| TOTAL net, non protected equity | | | $58,513 |
| for unsecured and under-secured claims | | | |

**Exhibit "1.1"** - Page 2

EXHIBIT "1.2"
LIQUIDATION ANALYSIS for
CD THOMAS FARMS, LLC

| ASSET DESCRIPTION | MARKET VALUE | LIEN(S) | DEBTOR'S EXEMPT/EQUITY |
|---|---|---|---|
| Case IH Magnum Tractor | $120,000.00 | Equity Bank $120,000.00 | $0.00 |
| 2000 Dodge Ram 2500 w/Bale Bed | $9,750.00 | Equity Bank $9,750.00 | $0.00 |
| 2000 Peterbilt Truck | $40,000.00 | Equity Bank $40,000.00 | $0.00 |
| 1994 Peterbilt Truck | $25,000.00 | Equity Bank $25,000.00 | $0.00 |
| TOTAL | $194,750.00 | $263,152.00 | $0.00 |
| TOTAL NET EQUITY | | | $0.00 |

This information is also shown on Exhibit 1.1.

EXHIBIT

CASE NO. BK21-40519 CHAD AND LISA THOMAS
OCTOBER 20, 2021 CASH FLOW 2022 2023 2024 2025 AND 2026

| # | A | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 |
|---|---|---|---|---|---|---|---|
| 1 | | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 |
| 2 | Alfalfa SW1/4 26 65 Acres x 6 Tons x $160.00 Ton | | $62,400.00 | $62,400.00 | $62,400.00 | $62,400.00 | $62,400.00 |
| 3 | Alfalfa SE1/4 26 65 Acres x 6 Tons x $160.00 Ton | | $62,400.00 | $62,400.00 | $62,400.00 | $62,400.00 | $62,400.00 |
| 4 | Wheat SW1/4 26 65 Acres x 100 Bushels x $5.70 Bushel | | $37,050.00 | $37,050.00 | $37,050.00 | $37,050.00 | $37,050.00 |
| 5 | Wheat SW1/4 5 65 Acres x 100 Bushels x $5.70 Bushel | | $37,050.00 | $37,050.00 | $37,050.00 | $37,050.00 | $37,050.00 |
| 6 | Wheat NW1/4 36 65 Acres x 100 Bushels x $5.70 Bushel (School Land) | | $37,050.00 | $37,050.00 | $37,050.00 | $37,050.00 | $37,050.00 |
| 7 | Wheat Non-irrigated SW1/4 5 21 Acres x 50 Bushels x $5.70 | | $5,985.00 | $5,985.00 | $5,985.00 | $5,985.00 | $5,985.00 |
| 8 | Wheat Non-irrigated Sec. 36 37 Acres x 50 Bushels x $5.70 | | $10,545.00 | $10,545.00 | $10,545.00 | $10,545.00 | $10,545.00 |
| 9 | Wheat Non-irrigated SW1/4 4 51 Acres x 50 Bushels x $5.70 x 2/3 (Meyer) | | $9,690.00 | $9,690.00 | $9,690.00 | $9,690.00 | $9,690.00 |
| 10 | Wheat Non-irrigated SW1/4 13 90 Acres x 50 Bushels x $5.70 x 2/3 (Kirkpatrick) | | $17,100.00 | $17,100.00 | $17,100.00 | $17,100.00 | $17,100.00 |
| 11 | Sorghum SW1/4 26 65 Acres x 6 Ton x $120.00 Ton | | $46,800.00 | $46,800.00 | $46,800.00 | $46,800.00 | $46,800.00 |
| 12 | Sorghum SW1/4 5 65 Acres x 6 Ton x $120.00 Ton | | $46,800.00 | $46,800.00 | $46,800.00 | $46,800.00 | $46,800.00 |
| 13 | Sorghum NW1/4 36 65 Acres x 6 Ton x $120.00 Ton | | $46,800.00 | $46,800.00 | $46,800.00 | $46,800.00 | $46,800.00 |
| 14 | Corn Non-irrig 70 Acres x 100 Bushel x $5.20 (Kirkpatrick) (2/3) | | $24,667.00 | $24,667.00 | $24,667.00 | $24,667.00 | $24,667.00 |
| 15 | Corn Irrigated SE1/4 26 65 Acres x 180 Bushel x $520 | | $60,840.00 | $60,840.00 | $60,840.00 | $60,840.00 | $60,840.00 |
| 16 | Corn Irrigated SW1/4 5 60 Acres x 180 Bushel x $5.20 | | $56,160.00 | $56,160.00 | $56,160.00 | $56,160.00 | $56,160.00 |
| 17 | Corn Irrigated NW1/4 36 65 Acres x 180 Bushel x $5.20 | | $60,840.00 | $60,840.00 | $60,840.00 | $60,840.00 | $60,840.00 |
| 18 | Corn Irrigated NE1/4 36 127 Acres x 180 Bushel x $5.20 | | $118,872.00 | $118,872.00 | $118,872.00 | $118,872.00 | $118,872.00 |
| 19 | Corn Irrigated SW1/4 36 65 Acres x 180 Bushel x $5.20 | | $60,840.00 | $60,840.00 | $60,840.00 | $60,840.00 | $60,840.00 |
| 20 | Corn Irrigated SE1/4 36 65 Acres x 180 Bushel x $5.20 | | $60,840.00 | $60,840.00 | $60,840.00 | $60,840.00 | $60,840.00 |
| 21 | Custom Hay 815 Acres x 1.5 Ton x $120.00 a Ton | | $146,700.00 | $146,700.00 | $146,700.00 | $146,700.00 | $146,700.00 |
| 22 | Custom Wheat Harvest | $0.00 | $0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 23 | Custom Corn Harvest | $0.00 | $0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 24 | Custom Wheat Planting | $0.00 | $0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 25 | Custom Corn Planting | $0.00 | $0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 26 | Trucking | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 27 | Government Payments | | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 |
| 28 | Coop Input Finance | | | | | | |
| 29 | Alfalfa, Wheat, Bean Rent | $75,600.00 | | | | | |
| 30 | Tractor Rent | $25,148.00 | | | | | |
| 31 | Contract Labor | $27,000.00 | $12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 |
| 32 | W Wages | $8,300.00 | $16,600.00 | $16,600.00 | $16,600.00 | $16,600.00 | $16,600.00 |
| 33 | TOTAL PROJECTED INCOME | $136,048.00 | $1,078,029.00 | $1,078,029.00 | $1,078,029.00 | $1,078,029.00 | $1,078,029.00 |
| 34 | | | | | | | |
| 35 | EXPENSES | | | | | | |
| 36 | Seed | | $55,973.00 | $55,973.00 | $55,973.00 | $55,973.00 | $55,973.00 |
| 37 | Gasoline, Fuel and Oil | | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 |
| 38 | Irrigation Electricity & Supplies | | $48,000.00 | $48,000.00 | $48,000.00 | $48,000.00 | $48,000.00 |
| 39 | Fertilizer | | $163,200.00 | $163,200.00 | $163,200.00 | $163,200.00 | $163,200.00 |
| 40 | Chemical | | $39,300.00 | $39,300.00 | $39,300.00 | $39,300.00 | $39,300.00 |
| 41 | Real Estate Tax | | $14,123.00 | $14,123.00 | $14,123.00 | $14,123.00 | $14,123.00 |
| 42 | Crop Insurance | | $28,000.00 | $28,000.00 | $28,000.00 | $28,000.00 | $28,000.00 |
| 43 | Farm Insurance | | $26,400.00 | $26,400.00 | $26,400.00 | $26,400.00 | $26,400.00 |
| 44 | Labor | | $48,000.00 | $48,000.00 | $48,000.00 | $48,000.00 | $48,000.00 |
| 45 | Payroll Tax | | $6,885.00 | $6,885.00 | $6,885.00 | $6,885.00 | $6,885.00 |
| 46 | Repairs Truck/Mach | | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 |
| 47 | Equipment Rent | | $179,141.00 | $179,141.00 | $179,141.00 | $179,141.00 | $179,141.00 |
| 48 | Land Rent | | $82,000.00 | $82,000.00 | $82,000.00 | $82,000.00 | $82,000.00 |
| 49 | Coop Input Expense Payment Interest | | $25,000.00 | $25,000.00 | $25,000.00 | $25,000.00 | $25,000.00 |
| 50 | Miscellaneous for Continuation Preservation and Operation of Business | | $19,900.00 | $19,900.00 | $19,900.00 | $39,887.11 | $39,887.11 |
| 51 | TOTAL EXPENSES | $0.00 | $785,922.00 | $785,922.00 | $785,922.00 | $805,909.11 | $805,909.11 |
| 52 | | | | | | | |
| 53 | NET OPERATING INCOME | $136,048.00 | $292,107.00 | $292,107.00 | $292,107.00 | $272,119.89 | $272,119.89 |
| 54 | | | | | | | |
| 55 | Living Expense | $11,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 |
| 56 | Estimated Fed and State Income Tax | $0.00 | $25,000.00 | $25,000.00 | $25,000.00 | $25,000.00 | $25,000.00 |
| 57 | Attorneys Fees | $9,500.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 |
| 58 | Chapter 11 Trustee Fees Est. | | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 |
| 59 | TOTAL | $115,548.00 | $215,107.00 | $215,107.00 | $215,107.00 | $195,119.89 | $195,119.89 |
| 60 | | | | | | | |
| 61 | Less Annual Plan Payments | | | | | | |
| 62 | Box Butte County Treasurer - Claim 12-1 Personal Property Tax $326.98 @ 14% 3 Years | | $140.84 | $140.84 | $140.84 | | |
| 63 | Box Butte County Treasurer - Claim 13-2 2020 $4,820.36 @ 14% 3 Years SE1/4 26 | | $2,076.28 | $2,076.28 | $2,076.28 | | |
| 64 | Box Butte County Treasurer - Claim 13-2 Redeem $11,162.65 @ 14% 3 Years SE1/4 26 | | $4,808.10 | $4,808.10 | $4,808.10 | | |
| 65 | Box Butte County Treasurer - Claim 14-1 Second Half 2020 $2,127.55 @ 14% 3 Years SW1/4 5 | | $752.15 | $752.15 | $752.15 | | |
| 66 | Box Butte County Treasurer - Claim 14-1 Redeem $12,586.06 @ 14% 3 Years SW1/4 5 | | $5,421.21 | $5,421.21 | $5,421.21 | | |
| 67 | Box Butte County Treasurer - Claim 15-2 Second Half 2020 $2,267.76 @ 14% 3 Years SW1/4 26 | | $976.80 | $976.80 | $976.80 | | |
| 68 | Box Butte County Treasurer - Claim 15-2 Redeem $13,492.67 @ 14% 3 Years SW1/4 26 | | $5,811.73 | $5,811.73 | $5,811.73 | | |
| 69 | Equity Bank RE #2300 - Claim 4 $1,293,080.00 - RE Tax $46,457.05 = $1,246,602.95 25 Year Am 8 Year Balloon 5.25% | $75,000.00 | $91,333.91 | $91,333.91 | $91,333.91 | $91,333.91 | $91,333.91 |
| 70 | Equity Bank Tractor #5407 - Claim 4 $120,000.00 5.25% 6 Years | $25,113.00 | $24,064.54 | $24,064.54 | $24,064.54 | $24,064.54 | $24,064.54 |
| 71 | Equity Bank Equipment #5008 - Claim 4 $68,402.00 + $74,750.00 = $143,152.00 6 Years 5.25% | | $28,608.05 | $28,608.05 | $28,608.05 | $28,608.05 | $28,608.05 |
| 72 | Equity Bank LOC #2594 | | | | | | |
| 73 | Internal Revenue Service Claim 3-1 FICA 12/31/19 $38,857.00 + $955.38 3% | | $8,693.22 | $8,693.22 | $8,693.22 | $8,693.22 | $8,693.22 |
| 74 | Internal Revenue Service Hw. Use Tax | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 75 | Capital One Bank Claim 1-1 $4,910.74 | | | | | | |
| 76 | JP Morgan Chase Claim 2-1 $12,160.27 | $4,182.00 | $8,364.00 | $8,364.00 | $8,364.00 | $8,364.00 | $8,364.00 |
| 77 | US Bank Claim 5 $13,224.26 | $4,596.00 | $9,192.00 | $9,192.00 | $9,192.00 | $9,192.00 | $9,192.00 |
| 78 | House Mortgage | $6,552.00 | $13,104.00 | $13,104.00 | $13,104.00 | $13,104.00 | $13,104.00 |
| 79 | Liquidation Analysis $58,513.00 @ 5 Years | | $11,702.60 | $11,702.60 | $11,702.60 | $11,702.60 | $11,702.60 |
| 80 | TOTAL PLAN PAYMENTS | $115,443.00 | $215,049.43 | $215,049.43 | $215,049.43 | $195,062.32 | $195,062.32 |
| 81 | | | | | | | |
| 82 | PROJECTED INCOME REMAINING | $105.00 | $57.57 | $57.57 | $57.57 | $57.57 | $57.57 |

EXHIBIT 1
CASE NO. BK21-40519 CD THOMAS FARMS, LLC
OCTOBER 20, 2021 CASH FLOW 2022 2023 2024 2025 AND 2026

| A | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 1 | | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 |
| 2 | Crop Income | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3 | Trucking | $0.00 | $0.00 | $0.00 | $0.00 | 0.00 | 0.00 |
| 4 | Government Payments | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5 | Equipment Rent  * | | | | | | |
| 6 | TOTAL PROJECTED INCOME | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7 | | | | | | | |
| 8 | EXPENSES | | | | | | |
| 9 | License for Farm Plated Trucks $500.00 Per Year | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10 | Insurance $695.00 Per Year | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11 | Miscellaneous for Continuation Preservation and Operation of Business | | | | | | |
| 12 | TOTAL EXPENSES | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 13 | | | | | | | |
| 14 | NET OPERATING INCOME | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 15 | | | | | | | |
| 16 | Estimated Fed and State Income Tax - Debtor is a Pass Through Entity | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 17 | Attorneys Fees | | | | | | |
| 18 | Chapter 11 Trustee Fees Est. | | | | | | |
| 19 | TOTAL | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 20 | | | | | | | |
| 21 | Less Annual Plan Payments | | | | | | |
| 22 | Equity Bank | ** | ** | ** | ** | ** | ** |
| 23 | ** | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 24 | Liquidation Analysis $0.00 @ 5 Years | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 25 | TOTAL PLAN PAYMENTS | | | | | | |
| 26 | | | | | | | |
| 27 | PROJECTED INCOME REMAINING | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 28 | | | | | | | |
| 29 | 1. Equity Bank holds a perfected security interest in Post Petition rents and equipment and vehicles of LLC. | | | | | | |
| 30 | 2 Expenses included in Exhibit 1.1 | | | | | | |
| 31 | 3. Equity Bank payment under Second Amended Plan included in Exhibit 1.1 | | | | | | |

F:\WordPerfect\BRPT DOCS\THOMAS CHAD\CASH FLOW 5 YEAR CD THOMAS FARMS.qpw11/01/21

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

CHAD W. THOMAS and )     CASE NO. BK21-40519 (Lead Case)
LISA K. THOMAS, and )     CASE NO. BK21-40520
)        Chapter 11
CD THOMAS FARMS, LLC, )
)
Debtors. )

### STIPULATION

The Creditor, EQUITY BANK, and the Debtors by and through their attorneys of record,

hereby stipulate and agree as follows:

1.    The Creditor has filed a Claim herein, Claim No. 4-1.

2.    The Debtors filed their Amended Plan of Reorganization under Chapter 11 Subchapter V

of the United States Bankruptcy Code (Fil. #84), hereinafter referred to as the "Amended

Plan".

3.    The Creditor has filed a Motion for Relief From Automatic Stay (Fil. #17) (the

"Motion").

4.    The Creditor filed an Objection to Confirmation of the Amended Plan (Fil. #96),

hereinafter referred to as the "Objection".

5.    The Parties agree that to resolve their differences regarding the Motion, Amended Plan

and the Objection and the Parties agree to the following terms and conditions:

5.1    Second Amended Plan. The Debtors agree to withdraw their Amended Plan and

file a "Second Amended Plan" on or before November 1, 2021 (the "Second

Amended Plan"). The Second Amended Plan shall provide the following

treatment to Equity Bank:

**EXHIBIT**

**3**

5.1.1    Rent. The Debtors shall pay to Equity Bank on or before January 15, 2022 the

second half rent due from Don Thomas that arose Pre-Petition on Leases to certain

parcels of real estate securing Equity Bank's Claim and to the Case IH Magnum

tractor, in the amount of $50,374.00. Such rent shall be applied to Line of Credit

Note ending 2594.

5.1.2    Class 12 - Secured Claim of Equity Bank on Debtors' Farmland. This Claim is

impaired. The Bank has a lien on approximately 480 acres of farmland owned by

Chad Thomas of which approximately 375 acres is pivot irrigated farmland. The

rest is dryland, roads and waste. The appraised value of all crop land, including

irrigated and dryland is $1,293,060.00. Box Butte County holds a first lien for

Pre-Petition Real Estate Taxes in the amount of $45,293.79. The Debtors propose

to retain this land and pay Equity Bank $1,247,766.21 amortized on the

Confirmation Date over 25 years at 5.25% per annum in seven (7) equal annual

installments of $91,333.91 with the first installment due on or before December

31, 2022 and annually thereafter for a total of seven (7) annual installments with a

balloon payment of approximately $1,102,078.71 which amount shall include all

remaining principal and accrued, but unpaid, interest due on or before December

31, 2029.

5.1.3    Class 13 - Equity Bank Lien on Farm Equipment, 2000 Dodge Ram Pickup and

Two Peterbilt Trucks. This Claim is impaired. Equity Bank has a first lien on

Debtors' farm machinery the Debtors wish to retain, a 2000 Dodge Ram pickup, a

2000 Peterbilt truck and a 1994 Peterbilt truck, all of which have a total appraised

3-2

value of $143,152.00. See EX. 1, Liquidation Analysis, for a complete list of

equipment. The Debtors propose to pay this amount at 5.25% amortized on the

Confirmation Date to the Bank in six (6) annual installments of $28,608.05 with

the first payment due December 31, 2022. Equity Bank shall retain its lien on the

equipment and vehicles until this obligation is paid. The remaining equipment of

the Debtors has been sold through Big Iron Auctions, with the net proceeds of sale

paid to Equity Bank. All auction or other sale proceeds of the equipment and

annual payments on the equipment to be retained shall first be applied on the May

24, 2017, SBA Note ending in 5008 and then to a Line of Credit Note ending

2594.

5.1.4    Class 14 - Secured Claim of Equity Bank on Case IH Magnum Tractor. This

Claim is impaired. Equity Bank has a first lien on the Debtors' Case IH Magnum

Tract. This tractor was the subject of a 2017 purchase with funds from Almena

State Bank on SBA Note #xxx407, and on the date of filing, Equity Bank claimed

the principal was $81,865.00 with interest of $12,735.00 for a total of $94,000.00,

with interest accruing. Equity Bank also has a general perfected lien through its

Security Agreement and Financing Statement covering all farm equipment. The

Debtors propose to pay the appraised value of this tractor, $120,000.00 in six (6)

equal annual installments of $24,064.54 including interest of 5.25% amortized on

the Confirmation Date with the first payment due on or before December 31,

2022, and annually thereafter. The installment payment shall be first applied to

the above referenced Note ending 5407 and then to a Line of Credit Note ending

3

3-3

2594. Equity Bank shall retain its lien on this tractor until all payments have been made.

5.1.6   Default. The failure of Debtors to make any payment of principal and interest when due to Equity Bank as provided herein shall be an event of default under the Second Amended Plan. The failure to do and perform any other act or agreement provided for in the Second Amended Plan with respect to Equity Bank shall be an event of default. In the event of payment default for more than thirty (30) days, Equity Bank shall be entitled to file an Affidavit of Default and Non-Cure without notice, and upon the filing thereof shall be entitled to relief from the automatic stay and the right to foreclose its lien or liens in the manner allowed by law and pursuant to any applicable Deeds of Trust and Security Agreements. In the event of any other non-payment default with respect to Equity Bank under the Second Amended Plan, written notice of such default shall be given to the Debtors, specifying the default. Debtors shall have thirty (30) days after the receipt of such Notice of Default to cure the same, and if Debtors fail to cure any such default, Equity Bank shall be entitled to file an Affidavit of Default and Non-Cure. Upon the filing thereof, Equity Bank shall be entitled to relief from the automatic stay and the right to foreclose its lien or liens in the manner allowed by law and pursuant to any applicable Deeds of Trust and Security Agreements.

5.1.7   Input Financing Default. Notwithstanding any other provision of the Second Amended Plan, if the Debtors do not receive a written binding commitment for input financing for 2022 crop and operational expenses on or before March 17,

3-4

2022 in an amount of at least $700,000.00 (the "Input Financing Default"), from or backed by recognized financial lenders then such failure shall constitute a default and Debtors shall, without notice or demand, surrender all collateral of claims for Classes 12, 13 and 14 to Equity Bank within ten (10) calendar days of March 17, 2022 (the "Surrender Date"). Upon surrender, Equity Bank agrees to liquidate the collateral in a commercially reasonable manner (subject to Option rights of Don Thomas) and apply the proceeds to the amounts owed by Debtors under Claim 4-1. Debtors agree not to object to such commercially reasonable liquidation of such collateral. Any deficiency remaining after applying the proceeds (including those realized through Option rights of Don Thomas) to the amounts owed by Debtors shall be written-off by Equity Bank and determined uncollectible against the Debtors as a bad debt. Equity Bank shall amend its Proof of Claim 4-1 to reflect its Claim as zero. Notwithstanding surrender of real estate under this paragraph, Debtors shall maintain the right to grow and harvest the currently planted winter wheat crop during the 2022 growing season on any surrendered real estate, and Debtors shall be responsible for all costs and expense of growing and harvesting the same.

5.1.8   Option to Purchase. Beginning on the Confirmation Date, Equity Bank and the Debtors hereby agree to grant to Don Thomas an Option to Purchase all assets that serve as the collateral of Equity Bank for all claims in Classes 12, 13 and 14 including irrigation pivots and other irrigation equipment situated on or related to real estate (the "Option"). The purchase price shall be in an amount that provides

5

3-5

$1,510,918.21 in net proceeds to Equity Bank less non-tax closing costs and fees, with the intent that taxes owed on real estate or personal property at the time of any sale to Don Thomas shall not lessen the amount ($1,510,918.21) of net proceeds to Equity Bank. The Option shall be all-inclusive of all assets that serve as the collateral of Equity Bank for claims in Classes 12, 13 and 14 and Don Thomas may not partially exercise any portion of the Option for some, but not all, of the assets that serve as the collateral of Equity Bank for claims in Classes 12, 13 and 14 unless otherwise agreed in writing by Equity Bank. Such sale shall be free and clear of all liens, taxes and encumbrances with the net proceeds paid to Equity Bank. Such Option shall be exercised on or before ten (10) calendar days after the Surrender Date (the "Option Date") by Don Thomas providing a written notice to Equity Bank and the Debtors and executing a binding, unconditional Purchase Agreement for all such collateral, which Purchase Agreement will provide $1,510,918.21 in net proceeds to Equity Bank, less non-tax closing costs and fees. Such sale shall be closed within thirty (30) days following the exercise of the Option by Don Thomas (the "Closing Date"), but may be delayed for a reasonable amount of time if Court approval of sale is required for the Option. If the Option is exercised before the Surrender Date and the Court must approve the sale under 11 U.S.C. §363, the Option shall be exercised pursuant to a Motion to Sell Free and Clear of all Liens, Taxes and Encumbrances, which Motion shall incorporate the terms and conditions of the Option.

6

3-6

5.1.9  <u>Discharge.</u> Chad Thomas and Lisa Thomas shall not receive a discharge upon

confirmation of the Second Amended Plan until all payments due to Equity Bank

under the Second Amended Plan have been made.  In the event that Equity Bank

receives collateral under the surrender pursuant to the Input Financing Default

provisions above, all deficiency debt owed to Equity Bank upon the application of

all such sale proceeds (including those realized from the Option to Don Thomas)

shall be written off by Equity Bank and determined to be uncollectible against the

Debtors as a bad debt.

5.1.10  <u>Liquidation Analysis Cash Flow.</u>  The Debtors have proposed a Cash Flow which

is attached hereto and a Liquidation Analysis, Doc. #126, in response to the

Motion and the Objection.  The Cash Flow and Liquidation Analysis shall be

included as Exhibits to the Second Amended Plan and incorporated therein by

reference.

6.    The terms of this Stipulation shall be contractually binding on the Parties when signed.

Upon confirmation of the Second Amended Plan, the Debtors shall not amend the

confirmed Second Amended Plan, modify the Second Amended Plan or convert to

another chapter of the Bankruptcy Code without the written consent of Equity Bank

which consent shall not be unreasonably withheld. Debtors shall operate under a

shortened bar date for the Second Amended Plan and request the earliest confirmation

trial date available.  If the Second Amended Plan conforms to the terms and conditions of

this Stipulation, Equity Bank shall vote to approve the Second Amended Plan on each

class of claims on which it is entitled to vote.  In the event the Second Amended Plan is

7

3-7

not confirmed, the Debtors agree to remit and provide the rent in the amount of

$50,374.00 to Equity Bank on or before January 15, 2022, and both Parties shall have all

rights available to them at that time, including the Debtors the opportunity to propose a

Third Amended Plan that incorporates the terms and conditions of this Stipulation and for

Equity Bank the opportunity to proceed with the Motion.

7.   Upon confirmation of the Second Amended Plan, Equity Bank shall withdraw its Motion

and shall dismiss the Adversary Proceeding Case No. BK21-04014 with prejudice at

Equity Bank's costs.

8.   The address that Debtors are to remit payments due hereunder to Equity Bank is:

7701 E. Kellogg Drive
Wichita, KS 67207

9.   Upon execution, either party may file a copy of this Stipulation with the Bankruptcy

Court for approval without hearing, as an anticipated settlement of the Motion already

noticed to all parties, under Fed. R. Bankr. P. 4001(d)(4) and under Loc. R. Bankr. P.

9019-1(B).

DATED:      October 29, 2021.          EQUITY BANK, Creditor

                                       By:_____
                                          Adam Hocsing, NSBA #24938
                                          One of its Attorneys
                                          Simmons Olsen Law Firm, PC, LLO
                                          1502 Second Ave.
                                          Scottsbluff, NE 69361
                                          (308) 632-3811

3-8

CHAD THOMAS, LISA THOMAS and
CD THOMAS FARM, LLC, Debtors

By: _____

Wayne Griffin #17518
Attorney at Law
406 North Dewey Street
P.O. Box 911
North Platte, NE 69103-0911
Telephone (308) 534-3526
wgriffinlaw@hotmail.com

and

Allen L. Fugate #16838
Attorney at Law
210 North Jeffers Street, Ste. 100
P.O. Box 82
North Platte, NE 69103-0082
Telephone (308) 534-1950
alfugate@windstream.net

9

3-9

CASE NO. BK21-40519 CHAD AND LISA THOMAS
OCTOBER 20, 2021 CASH FLOW 2022 2023 2024 2025 AND 2026

| | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 |
|---|---|---|---|---|---|---|
| Alfalfa SW1/4 20 65 Acres x 6 Tons x $160.00 Ton | | $62,400.00 | $62,400.00 | $62,400.00 | $62,400.00 | $62,400.00 |
| Alfalfa SE1/4 26 65 Acres x 6 Tons x $160.00 Ton | | $62,400.00 | $62,400.00 | $62,400.00 | $62,400.00 | $62,400.00 |
| Wheat SW1/4 26 65 Acres x 100 Bushels x $6.70 Bushel | | $37,000.00 | $37,000.00 | $37,000.00 | $37,000.00 | $37,000.00 |
| Wheat SW1/4 5 65 Acres x 100 Bushels x $6.70 Bushel | | $37,050.00 | $37,050.00 | $37,050.00 | $37,050.00 | $37,050.00 |
| Wheat NW1/4 36 65 Acres x 100 Bushels x $5.70 Bushel (School Land) | | $37,050.00 | $37,050.00 | $37,050.00 | $37,050.00 | $37,050.00 |
| Wheat Non-Irrigated SW1/4 21 Acres x 60 Bushels x $6.70 | | $37,050.00 | $37,050.00 | $37,000.00 | $37,050.00 | $37,050.00 |
| Wheat Non-Irrigated Sec. 30 37 Acres x 60 Bushels x $6.70 | | $5,985.00 | $5,985.00 | $5,985.00 | $5,985.00 | $5,985.00 |
| Wheat Non-Irrigated SW1/4 4 51 Acres x 60 Bushels x $5.70 x 2/3 (Mayer) | | $10,545.00 | $10,545.00 | $10,545.00 | $10,545.00 | $10,545.00 |
| Wheat Non-Irrigated SW1/4 13 90 Acres x 90 Bushels x $5.70 x 2/3 (Kirkpatrick) | | $9,690.00 | $9,690.00 | $9,690.00 | $9,690.00 | $9,690.00 |
| Sorghum SW1/4 26 65 Acres x 6 Tons x $120.00 Ton | | $17,100.00 | $17,100.00 | $17,100.00 | $17,100.00 | $17,100.00 |
| Sorghum SW1/4 5 65 Acres x 6 Tons x $120.00 Ton | | $46,800.00 | $46,800.00 | $46,800.00 | $46,800.00 | $46,800.00 |
| Sorghum NW1/4 36 65 Acres x 6 Tons x $120.00 Ton | | $46,800.00 | $46,800.00 | $46,800.00 | $46,800.00 | $46,800.00 |
| Corn Non-Irrig 70 Acres x 100 Bushel x $5.20 (Kirkpatrick) (2/3) | | $46,800.00 | $46,800.00 | $46,800.00 | $46,800.00 | $46,800.00 |
| Corn Irrigated SE1/4 26 65 Acres x 180 Bushel x $5.20 | | $24,867.00 | $24,867.00 | $24,867.00 | $24,867.00 | $24,867.00 |
| Corn Irrigated SW1/4 5 60 Acres x 180 Bushel x $5.20 | | $60,840.00 | $60,840.00 | $60,840.00 | $60,840.00 | $60,840.00 |
| Corn Irrigated NW1/4 36 65 Acres x 180 Bushel x $5.20 | | $56,160.00 | $56,160.00 | $56,160.00 | $56,160.00 | $56,160.00 |
| Corn Irrigated NE1/4 36 127 Acres x 180 Bushel x $5.20 | | $60,840.00 | $60,840.00 | $60,840.00 | $60,840.00 | $60,840.00 |
| Corn Irrigated SW1/4 30 65 Acres x 180 Bushel x $6.25 | | $118,872.00 | $118,872.00 | $118,872.00 | $118,872.00 | $118,872.00 |
| Corn Irrigated SE1/4 30 65 Acres x 180 Bushel x $6.25 | | $60,840.00 | $60,840.00 | $60,840.00 | $60,840.00 | $60,840.00 |
| Custom Hay 816 Acres x 1.5 Ton x $120.00 a Ton | | $60,840.00 | $60,840.00 | $60,840.00 | $60,840.00 | $60,840.00 |
| Custom Wheat Harvest | | $146,700.00 | $146,700.00 | $146,700.00 | $146,700.00 | $146,700.00 |
| Custom Corn Harvest | $0.00 | $0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Custom Wheat Planting | $0.00 | $0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Custom Corn Planting | $0.00 | $0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Trucking | $0.00 | $0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Government Payments | $0.00 | $0.00 | $0.00 | $0.00 | 0.00 | 0.00 |
| Coop Input Finance | | $40,000.00 | $49,000.00 | $49,000.00 | $40,000.00 | $40,000.00 |
| Alfalfa, Wheat, Bean Rent | | | | | | |
| Tractor Rent | $75,000.00 | | | | | |
| Contract Labor | $29,148.00 | | | | | |
| W Wages | $27,000.00 | $12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 |
| TOTAL PROJECTED INCOME | $8,300.00 | $16,600.00 | $16,800.00 | $16,600.00 | $16,600.00 | $16,600.00 |
| | $139,048.00 | $1,078,029.00 | $1,078,029.00 | $1,078,029.00 | $1,078,029.00 | $1,078,029.00 |
| EXPENSES | | | | | | |
| Seed | | | | | | |
| Gasoline, Fuel and Oil | | $55,973.00 | $55,973.00 | $55,973.00 | $55,973.00 | $55,973.00 |
| Irrigation Electricity & Supplies | | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 |
| Fertilizer | | $48,000.00 | $48,000.00 | $48,000.00 | $48,000.00 | $48,000.00 |
| Chemical | | $163,200.00 | $163,200.00 | $163,200.00 | $163,200.00 | $163,200.00 |
| Real Estate Tax | | $39,300.00 | $39,300.00 | $39,300.00 | $39,300.00 | $39,300.00 |
| Crop Insurance | | $14,123.00 | $14,123.00 | $14,123.00 | $14,123.00 | $14,123.00 |
| Farm Insurance | | $28,000.00 | $28,000.00 | $28,000.00 | $28,000.00 | $28,000.00 |
| Labor | | $26,400.00 | $26,400.00 | $26,400.00 | $26,400.00 | $26,400.00 |
| Payroll Tax | | $48,000.00 | $49,000.00 | $48,000.00 | $48,000.00 | $48,000.00 |
| Repairs Truck/Mach | | $6,885.00 | $6,885.00 | $6,885.00 | $6,885.00 | $6,885.00 |
| Equipment Rent | | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 |
| Land Rent | | $179,141.00 | $179,141.00 | $179,141.00 | $179,141.00 | $179,141.00 |
| Coop Input Expense Payment Interest | | $82,000.00 | $82,000.00 | $82,000.00 | $82,000.00 | $82,000.00 |
| Miscellaneous for Continuation Preservation and Operation of Business | | $25,000.00 | $25,000.00 | $25,000.00 | $25,000.00 | $25,000.00 |
| TOTAL EXPENSES | | $19,900.00 | $19,900.00 | $19,900.00 | $39,987.11 | $39,987.11 |
| | $0.00 | $705,922.00 | $705,922.00 | $705,922.00 | $805,909.11 | $805,909.11 |
| NET OPERATING INCOME | | | | | | |
| | $139,048.00 | $292,107.00 | $292,107.00 | $292,107.00 | $272,119.89 | $272,119.89 |
| Living Expense | | | | | | |
| Estimated Fed and State Income Tax | $11,000.00 | $40,000.00 | $49,000.00 | $40,000.00 | $40,000.00 | $40,000.00 |
| Attorneys Fees | $0.00 | $25,000.00 | $25,000.00 | $25,000.00 | $25,000.00 | $25,000.00 |
| Chapter 11 Trustee Fees Est. | $5,500.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 |
| TOTAL | $0.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 |
| | $115,048.00 | $215,107.00 | $215,107.00 | $215,107.00 | $195,119.89 | $195,119.89 |
| Less Annual Plan Payments | | | | | | |
| Box Butte County Treasurer - Claim 12-1 Personal Property Tax $326.98 @ 14% 3 Years | | | | | | |
| Box Butte County Treasurer - Claim 13-2 2020 $4,820.36 @ 14% 3 Years SE1/4 20 | | $140.84 | $140.84 | $140.84 | | |
| Box Butte County Treasurer - Claim 13-2 Redeem $11,162.90 @ 14% 3 Years SE1/4 20 | | $2,076.28 | $2,076.28 | $2,076.28 | | |
| Box Butte County Treasurer - Claim 14-1 Second Half 2020 $2,127.99 @ 14% 3 Years SW1/4 5 | | $4,808.10 | $4,808.10 | $4,808.10 | | |
| Box Butte County Treasurer - Claim 14-1 Redeem $12,550.08 @ 14% 3 Years SW1/4 5 | | $762.16 | $762.16 | $762.16 | | |
| Box Butte County Treasurer - Claim 15-2 Second Half 2020 $2,267.76 @ 14% 3 Years SW1/4 26 | | $5,421.21 | $5,421.21 | $5,421.21 | | |
| Box Butte County Treasurer - Claim 15-2 Redeem $13,492.67 @ 14% 3 Years SW1/4 26 | | $976.90 | $976.90 | $976.90 | | |
| Equity Bank RE #2300 - Claim 4 $1,293,080.00 - RE Tax $46,457.05 = $1,246,602.95 25 Year Am 8 Year Balloon 5.25% | | $5,811.73 | $5,811.73 | $5,611.73 | | |
| Equity Bank Tractor #5407 - Claim 4 $126,000.00 6.25% 6 Years | $75,000.00 | $91,333.91 | $91,333.91 | $91,333.91 | $91,333.91 | $91,333.91 |
| Equity Bank Equipment #5005 - Claim 4 $68,402.00 + $74,750.00 = $143,152.00 6 Years 5.25% | $25,113.00 | $24,084.54 | $24,084.54 | $24,084.54 | $24,084.54 | $24,084.54 |
| Equity Bank LOC #2694 | | $28,608.05 | $28,608.05 | $28,608.05 | $28,608.05 | $28,608.05 |
| Internal Revenue Service Claim 3-1 FICA 12/31/19 $36,857.00 + $958.38 3% | | | | | | |
| Internal Revenue Service Hw. Use Tax | | $8,893.22 | $8,893.22 | $8,893.22 | $8,893.22 | $8,893.22 |
| Capital One Bank Claim 1-1 $4,910.74 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| JP Morgan Chase Claim 2-1 $12,160.27 | | | | | | |
| US Bank Claim 5 $13,224.26 | $4,182.00 | $8,364.00 | $8,364.00 | $8,364.00 | $8,364.00 | $8,364.00 |
| Hughes Mortgage | $4,596.00 | $9,192.00 | $9,192.00 | $9,192.00 | $9,192.00 | $9,192.00 |
| Liquidation Analysis $68,513.00 @ 6 Years | $6,552.00 | $13,104.00 | $13,104.00 | $13,104.00 | $13,104.00 | $13,104.00 |
| TOTAL PLAN PAYMENTS | | $11,702.00 | $11,702.00 | $11,702.00 | $11,702.00 | $11,702.00 |
| | $115,443.00 | $215,049.43 | $215,049.43 | $215,049.43 | $195,062.32 | $195,062.32 |
| PROJECTED INCOME REMAINING | | | | | | |
| | $105.00 | $57.57 | $57.57 | $57.57 | $57.57 | $57.57 |